Ms. Chambers, are you on the line? Yes, Your Honor. I just want to make sure your colleague on the other side is also on. Yes, I am, Your Honor. Ms. Chambers, go ahead. Yes, I'm Amy Chambers. I'm the attorney for Mr. Moody, plaintiff in this case, petitioner. The issues in this case, this is a Social Security case, Title II and Title XVI. The issues are whether the administrative law judge committed harmful errors when he rejected limitations without sufficient explanation of alternate position changes as needed, off-task limitations, and postural limitations when the record, including medical opinions, Mr. Moody's reports, and objective medical evidence of MRIs and exams support that he would require these limitations, and such limitations may erode the competitive work and sedentary work, and that would support disability. The other issue in this case is whether the administrative law judge failed in his duty to further develop the record and close evidentiary gaps and prevent Mr. Moody's full and fair hearing because there was an incomplete record. There is a treating source statement that has an illegible signature from Unity Medical, which Mr. Moody had been treating from since at least 2014. The ALJ, notwithstanding the illegible signature, considered that opinion, correct? He considered it, and I would say that he provided a few reasons, but the reasons are conclusory, and the reasons are also not based on the reality of the record. For example, the judge, the ALJ, he concludes that he didn't require a cane, a use of an assistive device, so therefore he wasn't going to provide any weight to this opinion, but the opinion found he didn't need a cane, and none of the other opinions found he needed a cane. He has failed multiple modality treatments, and so that is a lay opinion by the judge, and it's not really a good reason. The other thing is the judge points to exams that show some range of motion loss and tenderness, but no neurological deficits. However, if you look at the record and the exams of the record, including baseline exams from physical therapy records, they show that Mr. Moody required he could only stand for a certain amount of time, he could only sit for a certain amount of time. Other opinions besides this illegible treating provider indicated that he required the need to be able to sit and stand at will. I think that's Dr. Auerbach. The exams continue to show abnormalities. He has severe stenosis, and I believe he also has congenital back abnormalities and a lipomosis, which would affect that as well. And again, as far as his conservative treatment, he failed conservative treatments. He's been conservatively treated, and the medical opinions didn't rely on that when they found his limitations. The other thing about this illegible treating source statement is the records are obviously missing from the record. And if the judge wanted to cite to something like exam findings, well, don't you think it would be logical that he should have the exam findings of that doctor with respect to things like hand dexterity issues or arm range of motion? Mr. Moody does complain of different lifting and repetitive lifting issues over time. And so that's not something that is out of the realm of his limitations besides him having other issues. So I would say that those aren't really good reasons. And if the judge is going to rely on the absence of something, that he should have the full record to make a full judgment. Judge Lynch, I'm sorry. What I haven't understood here in this case, what is the evidence that there were any additional records? Are you saying there's an inference from the fact that there is this report that that doctor, whoever he or she was, had performed other tests and there are medical records relating to that doctor? Is that what it's based on, some inference? Well, what I would say is the doctor, whoever provided this statement, indicated that they had treated plaintiffs since 2017, a date in 2017. Those records aren't in the transcript. So, yes, it would be an inference that there are existing records. This was a doctor who practiced at the same clinic, is that right? Whatever the doctor's name might have been, this was a doctor who practiced at the same clinic from which we do have other medical records? Yes. So UNITY is there are a number of doctors, I believe, from UNITY. Dr. Rue, I think Dr. Auerbach is from UNITY. But there are records from UNITY in the record. They're just missing a portion of records from 2017. But the ALJ gave you or your client or your side the opportunity to an adjournment to obtain those records, right? Well, this was not our case at the hearing level. When I say you, I mean the plaintiff, not attempting to cast any aspersions on you personally or your firm. But your side had the opportunity to obtain those records and apparently was unsuccessful in doing so. So why do we assume they existed or could be gotten if the ALJ sent a letter rather than the plaintiff making a request? I'm not really sure. So at the hearing level, the attorney thought that it was Dr. Portis. And the judge, they couldn't make out the name of the doctor or where they were even from. I mean, on the face of the record, it's identifiable where the fax was coming from. And that was coming from UNITY. There was not really much discussion about it. But I think that the ALJ, besides the attorneys, we try to get the records we can. But an ALJ still has a broad duty to develop the record because these are benefits for and against a plaintiff. So when the judge is going to use something to the detriment, a missing record to the detriment of plaintiffs potentially, and if there's some ambiguity about who it is, I mean, I'm not saying that this is the case, but because that signature is illegible, who's to say it's not Dr. Wu or Dr. I mean, there's other doctors that he's been seeing throughout, Dr. Kaplinacek. But it is identifiable, the fax number to that facility. And the use of an  ALJ. He's still found limitations. You're over your time. Oh, I'm sorry. You have two minutes for rebuttal. So we'll hear from the commissioner and then you can do your rebuttal. No problem. May it please the court, Padma Ghatke for the commissioner. Moody's primary argument is that the ALJ should have incorporated additional limitations assessed by this unidentified interest into the RFC and limitations that would erode the sedentary occupational base. But the ALJ did properly discount these limitations and explained himself in the decision. He explained they were unsupported and inconsistent with record evidence. And that includes other medical opinions, normal neurological and other examination findings, improvement with conservative treatment, and varied activities of daily living. Now, Moody's counsel talks about the opinion from the physical therapist. That opinion or functional assessment, as it were, was provided when he first started treating. However, as treatment went on, Moody gained in strength, gained in functional abilities, gained in range of motion, and had less pain. Even if Moody, in fact, needed to vary his positions for comfort, as Dr. Auerbach had opined, there's no evidence that this couldn't be accomplished within a typical sedentary work environment that allows for standard scheduled breaks and a general shifting of positions. Sedentary work doesn't mean you need to sit unmoving in your chair for six hours at a time. There is a general shifting allowed. Furthermore, treating specialist Dr. Joanne Wu did not limit Moody to part-time work schedule in her August 2014 opinion for sedentary work, which is the one the ALJ relied on considerably, as he knows, in his decision. Nor did she limit him to part-time work in her most recent February 2015 assessment for light work. Now, this doesn't support the internist's opinion that Moody would miss more than three days of work a month. As to the purported need for unscheduled breaks and time-off tasks that Moody claims he needs, that was unsupported by the record, as I've already mentioned, plus the clinical observations of Moody's mental health providers that showed that his memory and concentration were within normal limits. That was during the time that he was under mental health treatment from roughly October 2016 to mid-2017. Now, Moody points to abnormalities in the record, and there are abnormalities. Moody has some issues, but the ALJ actually notes this and says, given the claimant's ongoing pain complaints and consistent treatment history, I find for Dr. Ball that he's limited to sedentary work. And then lastly, there's the fact that we don't know who which internist signed the opinion. We don't really need to know that, though. The internist is an internist, and we know that he's not a specialist. We know that he only treated Moody for three months, from October 2017 to the beginning of January, when he issued his opinion. We know what he believed supported that opinion, because he wrote it in the opinion. He wrote that Moody had chronic back pain, spinal tenderness, and abnormal MRI findings. Well, we already knew that, and in fact, Dr. Devaney, who assessed no more than sedentary work or, sorry, no less than sedentary work, he actually assessed light work, but the ALJ gave Moody the benefit of the doubt. And Dr. Balderman, well, sorry, Dr. Balderman did not review the MRI findings, but Dr. Wu did. And Dr. Wu found that Moody could, in fact, do sedentary work. So we know within the opinion as a whole enough information to assess it under the regulations, under 1527. Here, the ALJ took reasonable steps to develop a complete medical record. In the first hearing, he found that he only had records from 2015. He found, he asked questions in order to identify those missing records. He agreed to hold the record open so that the council could obtain them. He asked Moody's council if he knew who this new internist was. He didn't know. And then he held a hearing five months later so that all this evidence could be obtained. Ultimately, if Moody's verdict was true... Did council, at the second hearing, did council provide additional documentation? He did. At the second hearing, the council provided the documentation that they had discussed at the first hearing. Now, they hadn't discussed this particular internist because the first hearing took place in September of 2017. And at that point, Moody hadn't even seen this doctor. Moody didn't actually see this doctor for the first time until a month after the first hearing. So they didn't even know that this would be out there. So Moody's council obtained the documentation they knew about, plus some additional documentation at the time, and submitted it all. And at no point in the administrative office process did Moody or his council tell the agency that they believed that there were records missing that were crucial to their case. Nor did they do anything to obtain them. Moody's council now says that this information was easily identifiable. But I noticed that they have not obtained the information or the records, if they do exist, and submitted them to the district court or to this court. In any case, we've got 700-plus pages of records with multiple opinions that allow the ALJ to make an informed decision on Moody's disability. So for that purposes, it is, in fact, complete records without any obvious evidentiary gaps. So at the end of the day, the ALJ here did what he was tasked to do. He reached an RFC for sedentary work that incorporated all of Moody's credibly established limitations. The analysis was based on a complete and sufficiently developed record with free of legal error and permits meaningful judicial review. Moody is asking this court to reweigh the evidence in his favor, but that is contrary to the substantial evidence standard of review. And Moody has not met his burden of furnishing evidence that he had limitations that exceeded the ALJ's well-supported RFC. Therefore, this court should affirm the commissioner's final decision denying Moody's claim for disability benefits. Thank you. We'll hear the rebuttal. First, I would like to say that the record consistently shows whether or not you want to take it as the record as a whole. The record shows that Mr. Moody requires an alternate sitting-standing position change and bending limitations and other limitations that are not accounted for. So you have this illegible treating provider who has provided an opinion. The ALJ, even if you were to say you don't need to get those records because you have this other, you have Dr. Auerbach, you have Dr. Wu who's provided multiple different opinions in a workman's compensation setting, and you have this 2018 opinion that is three years worth. It consistently shows Mr. Moody requires an alternate sit-stand and moving option. He was observed doing it at the hearing. He was observed doing it during exams. He complained to Dr. Klemczak-Lohr that his pain was worsening. Modalities, he failed modalities, things like that. So there's that. Besides that, again, just everything else is in my papers, but the record shows that he requires further limitations whether or not you're crediting Dr. Auerbach more, but even his functional report indicates what his limitations are, and that's been consistent throughout the record. All right. Thank you very much. Thank you both. The Court will reserve decision.